SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
03/21/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **540-718-8973**, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER **358327094007452**, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS | Case No. 3:19mj00016<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Robinson N. Blake, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **540-718-8973**, with International Mobile Subscriber Identity/Electronic Serial Number **358327094007452** ("the SUBJECT PHONE"), that is stored at premises controlled by Verizon Wireless, a wireless telephone service provider headquartered at 1 Verizon Way, Basking Ridge, New Jersey 07920. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon Wireless to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March of 2009. I am currently assigned to the Richmond Division of the FBI, Charlottesville

Resident Agency. My principal duties include the investigation of various criminal violations, to include narcotics violations and violent criminal gangs.

3. I am a federal law enforcement officer under applicable provisions of the United States Code under Rule 41(a) of the Federal Rules of Criminal Procedure. I have received training in and have experience in the enforcement of the laws of the United States, including the preparation and presentation of search warrants, and in executing court-ordered search warrants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a) and 21 U.S.C. §§ 846 have been committed, are being committed, and will be committed by LOFTON LAMBERT IV ("LAMBERT"). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. The Federal Bureau of Investigation and the Blue Ridge Gang and Drug Task Force ("BRTF") are conducting a joint-investigation of LAMBERT. LAMBERT is suspected of being a major trafficker of cocaine and crack-cocaine in the Culpeper, Virginia area.

7. I am aware of a Confidential Informant ("CI-1") that has conducted approximately thirteen controlled purchases of illegal narcotics for BRTF. CI-1 conducted approximately nine of these purchases for consideration on a felony charge he/she was facing at the time. In July of 2018, BRTF utilized CI-1 to purchase suspected cocaine powder from LAMBERT. CI-1 purchased the

suspected cocaine through an identified unwitting individual ("UI-1"). UI-1 utilized CI-1's cellular phone to contact LAMBERT prior to the purchase. A review of telephone toll records confirms calls were placed from CI-1's telephone to the SUBJECT PHONE around the time of the purchase. CI-1 told law enforcement that he/she drove UI-1 to make the purchase from LAMBERT. Law Enforcement was able to surveil CI-1 dropping UI-1 off in the vicinity of a location known to be associated with LAMBERT. Law Enforcement surveilled the location of the purchase and observed LAMBERT arrive. UI-1 was observed walking to the same area LAMBERT was observed. UI-1 was then observed walking back to CI-1s vehicle. A few moments later, Law Enforcement observed LAMBERT departing the area. Law Enforcement did not observe the actual hand-to-hand transaction between LAMBERT and UI-1.

8. In August, 2018, CI-1 told law enforcement that he/she had been obtaining cocaine and crack cocaine powder from LAMBERT for a period of approximately eighteen months. CI-1 would not receive the drugs directly from LAMBERT, but instead would go through other individuals, some of who are known to law enforcement. During the first six months of dealing indirectly with LAMBERT, CI-1 purchased one to four grams of cocaine twice per week.

9. I am aware of a Confidential Informant ("CI-2") that has conducted one controlled purchase for the BRTF and facilitated a second controlled purchase. CI-2 was facing a probation violation at the time of the aforementioned controlled purchase. In August, 2018, CI-2 told law enforcement that LAMBERT had a narcotics supplier who was located in Washington, D.C., near Union Station.

10. I am aware of a Confidential Informant ("CI-3") that has conducted two controlled purchases for the BRTF. CI-3 made statements to law enforcement that were not in his/her self-interest when, in September, 2018, he/she told law enforcement that LAMBERT had been dealing

drugs for approximately fifteen years. CI-3 said he/she had consistently gotten fifteen grams of crack cocaine from LAMBERT every week between January 2015 and September 2018. According to CI-3, LAMBERT had a narcotics supplier located in Warrenton, Virginia. CI-3 also told law enforcement that, as of September 2018, the telephone number he/she used to contact LAMBERT is the SUBJECT PHONE, and that he/she did not know LAMBERT to change phones that often.

11. In December of 2018, a representative from Enterprise Holdings Law Enforcement Line ("Enterprise") informed law enforcement that LOFTON LAMBERT, date of birth XX/XX/1985, rented an Enterprise vehicle on or about November 1, 2018. The date of birth provided to Enterprise is the same as the LOFTON LAMBERT subject whom the undersigned is investigating. LAMBERT provided Enterprise with a phone number which was the SUBJECT PHONE.

12. In March of 2019, Witness One ("W-1") was interviewed by law enforcement. The interview was voluntary and W-1 made statements against his/her self-interest. W-1 advised that UI-1 would get cocaine, both powder and crack, from LAMBERT for W-1, another individual ("I-1") known to W-1, and others. UI-1 did not have a phone and would use W-1's, I-1's and others' phones to call LAMBERT. After UI-1 called LAMBERT, LAMBERT would bring the drugs to UI-1's house. Everyone who ordered drugs would have to stay inside while UI-1 walked outside to meet LAMBERT. Up until last summer, W-1 would get crack or powder cocaine almost every day from LAMBERT through UI-1. W-1 would get a half gram or a gram at a time, averaging three to four grams per week. W-1 estimated that this activity went on for the first six months of 2018. The purchases were evenly split between crack and cocaine

powder. W-1 has been at UI-1's residence with other individuals, and after LAMBERT would bring the crack everyone would stay at UI-1's house and smoke it.

13. W-1 provided law enforcement with his/her phone number and I-1's phone number. A review of LAMBERT's toll records reveal that W-1's phone had approximately 24 contacts with LAMBERT's phone between approximately May 7, 2018 and May 22, 2018 and I-1's phone had approximately 44 contacts with Lambert's phone between May 17, 2018 and July 2, 2018.

14. Investigation has determined that Verizon Wireless maintained the SUBJECT PHONE. Telephone subscriber records produced by Verizon Wireless in December of 2018 for this number do not associate a name with this account. The address listed in the subscriber records is P.O. Box 123, Culpeper, Virginia, 22701. The records also show the type of account to be prepaid. My investigation to date, including queries of the Virginia Department of Motor Vehicles (DMV) and a publicly available database, has not shown the P.O. Box 123 address to be associated with LAMBERT. Based on my training and experience, I know narcotics dealers will routinely provide false subscriber information to cellular phone carriers in order to conceal their identities. Furthermore, investigation detailed in paragraphs Nine and Ten of this affidavit showed the SUBJECT PHONE to have been used by LAMBERT.

15. Telephone subscriber records were again produced by Verizon Wireless in March of 2019. The records now list the subscriber as "LOFTON H LAMBERT." The address listed in the subscriber records is 7400 Kirtley Trail, Culpeper, Virginia 22701. The records also show the type of account now to be postpaid. During surveillance conducted in February of 2019, LAMBERT was observed driving a gold colored minivan bearing Virginia license plate UTV-

5707. A query of DMV records showed this vehicle was registered to LOFTON HOWARD LAMBERT at 7400 Kirtley Trail, Culpeper, Virginia.

16. Based on my training and experience, I know that drug dealers routinely use cellular phones to communicate with suppliers and customers. Furthermore, the historical cell site data maintained by Verizon Wireless could show LAMBERT's travel to meet his narcotics suppliers and customers.

17. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they

provide service in their normal course of business in order to use this information for various business-related purposes

19. Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

20. Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession,

custody, or control. Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Robinson N. Blake*
Robinson N. Blake, Special Agent
Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on this 21st day of March 2019.

*Joel C. Hoppe*
JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE



# ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **540-718-8973**, with International Mobile Subscriber Identity/Electronic Serial Number **358327094007452 ("SUBJECT PHONE"),** that are stored at premises controlled by Verizon Wireless ("the Provider"), headquartered at 1 Verizon Way, Basking Ridge, New Jersey 07920.



## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period May 1, 2018 to July 31, 2018:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data (also known as the "real-time tool" or "RTT" data)**.**

## II. Information to be Seized by the Government

All information described above in Section I that evidence of violations of 21 U.S.C. §§ 841(a) and 21 U.S.C. §§ 846 involving LOFTON LAMBERT IV, during the period July 1, 2018 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.